1 | Farah Tabibkhoei (SBN 266312)
2 | REED SMITH LLP
  | 355 S. Grand. Ave. Suite 2900
3 | Los Angeles, CA 90071
4 | Telephone: (213) 457-8219
  | Fax: (213) 457-8080
5 | Email: FTabibkhoei@reedsmith.com

6 | James C. Pistorino (SBN 226496)
7 | PARRISH LAW OFFICES
8 | 224 Lexington Dr.
  | Menlo Park, CA 94025-2910
9 | Telephone: (650) 400-0043
10 | Email: james@dparrishlaw.com

11 | Attorneys for Plaintiff Linda Pehoviack

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

## IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINDA PEHOVIACK, an individual,<br><br>Plaintiff,<br><br>v.<br><br>ALEX AZAR, in his capacity as Secretary of the UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES,<br><br>Defendant. | Case No. _____ |

Plaintiff Linda Pehoviack brings this action against Defendant Alex Azar, in his official capacity as Secretary of the United States Department of Health and Human Services (hereinafter, "the Secretary"), to obtain injunctive relief for violation of federal law.  Plaintiff makes the following allegations based on the investigation of counsel, information and belief, and on personal knowledge.

## I.   SUMMARY

1.      This case presents a simple question: is the Secretary bound by the Supreme Court's decisions in *U.S. v. Stauffer Chem. Co.*, 464 U.S. 165 (1984) and *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991) such that collateral estoppel can apply against the Secretary where the Secretary has previously litigated, and lost, an issue against the same party?

2.      Likewise, having previously determined multiple times that coverage of a medical device to treat Plaintiff's extremely lethal form of brain cancer was appropriate, is it arbitrary and capricious for the Secretary to decide otherwise when the facts and/or circumstances have not changed?

3.      In the case at issue here, the Secretary asserts that his regulations (rather than the directives of the Supreme Court) preclude collateral estoppel and that month-to-month differing decisions (where the facts and/or circumstances have not changed) on Plaintiff's life-saving care are not arbitrary and capricious.  Plaintiff assert that those positions are wholly without merit.

4.      Tragically, Plaintiff is suffering from a particularly deadly form of brain cancer, glioblastoma (GBM)[1], and she is seeking coverage for life-extending treatment. In a particularly cruel twist, on a month-to-month basis, the Secretary is forcing the Plaintiff to repeatedly prove that she is entitled to the treatment and the Secretary's decisions differ with no predictable pattern.  Thus, the Secretary is playing a game of

---

[1] Former Senators Edward Kennedy and John McCain also suffered, and died from, this kind of cancer.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

chance with the Plaintiff's life – maybe this month she will get life-saving treatment – maybe she won't.

## II.   JURISDICTION

5.     This Court has jurisdiction over this action pursuant to 42 U.S.C. §§ 405(g) and 1395ff.  Plaintiff is filing suit after a final decision of the Medicare Appeals Council (acting on behalf of the Secretary) denying coverage of Ms. Pehoviack's Medicare claim (and, therefore, has exhausted her administrative remedies), the amount-in-controversy is more than $1,630 (42 U.S.C. §§ 1395ff(b)(1)(E)(i) and 1395ff(b)(1)(E)(iii)), and this suit was filed within 60 days of the Secretary's final decision.  *See* 42 C.F.R. § 405.1016(f).

6.     Venue is proper in this district pursuant to 42 U.S.C. § 405(g).

## III.   PARTIES

7.     Plaintiff Linda Pehoviack is an individual and a resident of the County of Orange of the State of California.  Ms. Pehoviack is eligible for Medicare on the basis of age (or disability) as previously determined by the Secretary.

8.     Defendant Alex Azar is sued in his official capacity as the Secretary of Health and Human Services.

## IV.   LEGAL BACKGROUND

9.     Of course, the doctrine of mutual collateral estoppel applies to the government and may bar the government from re-litigating facts/issues the government previously litigated and lost.  *See U.S. v. Stauffer Chem. Co.*, 464 U.S. 165 (1984).

10.     Moreover, collateral estoppel may be based not only on litigation in federal or state courts but also on proceedings before an agency, when the agency is acting in a judicial capacity.  In *Astoria Federal Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 107-08 (1991), the Supreme Court held that:

> We have long favored application of the common-law doctrines of collateral estoppel (as to issues) and res judicata (as to claims) to those determinations of administrative bodies that have attained finality.  When

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose. Such repose is justified on the sound and obvious principle of judicial policy that a losing litigant deserves no rematch after a defeat fairly suffered, in adversarial proceedings, on an issue identical in substance to the one he subsequently seeks to raise. To hold otherwise would, as a general matter, impose unjustifiably upon those who have already shouldered their burdens, and drain the resources of an adjudicatory system with disputes resisting resolution. The principle holds true when a court has resolved an issue, and should do so equally when the issue has been decided by an administrative agency, be it state or federal, which acts in a judicial capacity.

11. The application of collateral estoppel to agency determinations (even against agencies) has been affirmed in numerous cases. *See, e.g., Brewster v. Barnhart*, 145 Fed.App'x. 542 (6th Cir. 2005) (SSA ALJ bound by prior work determination).

12. Beyond the application of collateral estoppel and the arbitrary and capricious standard, Plaintiff also asserts that the simple denial of coverage is not supported by substantial evidence, is arbitrary and capricious, and is contrary to law, etc.

## V.   FACTUAL BACKGROUND

### A.   Tumor Treatment Field Therapy (TTFT)

13. Glioblastoma multiforme (GBM) is an unusually deadly type of brain cancer. Without treatment, survival is typically three months. Even with traditional forms of treatment, the survival rate at two years after treatment is ~31%, while at five years, only ~5% of patients are living.

14. More recently, treating GBM using alternating electric fields has been developed. This is known as tumor treatment field therapy (TTFT). Alternating electric fields interfere with tumor cell replication and have been shown to dramatically increase the period during which the GBM does not progress, as well as overall survival rates.

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

COMPLAINT

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

Indeed, TTFT has proven so effective that, in late 2014, a randomized clinical trial of TTFT was suspended because it would have been unethical to withhold TTFT treatment from the control group.[2]

15.     In ground-breaking papers published in the Journal of the American Medical Association (JAMA)[3] in 2015 and 2017, TTFT was shown to increase the two-year survival rate by more than 38% and to nearly triple the five-year survival rate.[4]

16.     As reported, TTFT was the first significant advance in treating GBM in more than a decade.  TTFT has become the standard of care for treating GBM and essentially all private insurers cover TTFT.  TTFT saves and/or extends GBM patients' lives, in some instances, by years.  Between January 2016 and December 2018, at least 93 scientific papers were published demonstrating the effectiveness of TTFT.  It is given a level one recommendation in the National Comprehensive Cancer Network (NCCN) guidelines, *i.e.*, there is consensus, among the experts, based on a high level of evidence, that TTFT is a recommended intervention.

---

[2] In much scientific research, study participants are randomly assigned to "control" and "test" groups.  The "control" group does not receive the treatment being tested.  In contrast, the "test" group does.  Proceeding in this way facilitates the determination of which effects, if any, are the result of the tested treatment as opposed to normal variation among the study participants.  During the course of a study, interim results are frequently measured to determine whether the study is proceeding as planned and whether any changes are needed.  When the interim results indicate that the tested treatment has a significant effect on health or safety, either negative or positive, ethical guidelines dictate that the study should be halted.  Thus, if the interim results indicate that the tested treatment was significantly more likely to result in death than the control group, the study would be halted and the treatment no longer given to the "test" group.  Likewise, if the interim result indicated that the tested treatment was literally life-saving, the study would be halted and the treatment would be made available to the "control" group.  In those circumstances, withholding the treatment from the "control" group would be unethical.

[3] The Journal of the American Medical Association (JAMA) is widely regarded as one of the most prestigious medical journals in the United States and the world.

[4] *See Stupp, et al.*, "MAINTENANCE THERAPY WITH TUMOR-TREATING FIELDS PLUS TEMOZOLOMIDE VS. TEMOZOLOMIDE ALONE FOR GLIOBLASTOMA: A RANDOMIZED CLINICAL TRIAL", JAMA, Vol. 314, No. 23, pgs. 2535-43 (December 15, 2015); *Stupp, et al.*, "EFFECT OF TUMOR TREATING FIELDS PLUS MAINTENANCE TEMOZOLOMIDE VS. MAINTENANCE TEMOZOLOMIDE ALONE ON SURVIVAL IN PATIENTS WITH GLIOBLASTOMA", JAMA, Vol. 318, No. 23, pgs. 2306-2316 (December 19, 2017).

- 5 –

17.    The sole supplier of the equipment that delivers TTFT is Novocure, Inc. which manufactures the Optune system.  The Optune system is rented on a monthly basis.  Thus, after a patient is prescribed the Optune system, she will have monthly claims for Medicare coverage.  Sadly, there is no known cure for GBM and patients prescribed TTFT treatment will have to continue that treatment for the rest of their hopefully extended lives.

**B.  The Medicare Appeals Process**

18.    Claims submitted by beneficiaries enrolled in Original Medicare are subject to a five (5) level appeal process, that can (and typically does) take more than a year.  At the first stage, a beneficiary submits a claim.  If the claim is denied, the beneficiary can request "redetermination."  If the claim is still denied, the beneficiary can request "reconsideration."  If the claim is still denied, the beneficiary can appeal to an Administrative Law Judge (ALJ).  If the ALJ denies the claim, the beneficiary can appeal to the Medicare Appeals Council (MAC).  Finally, if the claim is still denied, the beneficiary can file suit in district court.

**C.  Facts Specific to Ms. Pehoviack**

19.    Ms. Pehoviack is a 70-year old retired nurse who was diagnosed with GBM in March 2017.

20.    Ms. Pehoviack has been diagnosed with a GBM and, after other treatment, has been prescribed TTFT.

21.    Ms. Pehoviack has previously received multiple favorable decisions from ALJs determining that TTFT was medically reasonable and necessary for her and a covered benefit.  *See* ALJ Appeal Nos. 1-7824751206 (covering September-November 2017); 1-7905397060 (covering December 2017-March 2018); 1-8651277386 (covering November 2018-January 2019); 1-8754946128 (covering February-April 2019).  The Secretary did not appeal any of those decisions and they have become final.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

22.     For reasons that will become clear, of particular note is ALJ Appeal No. 1-8754946128 (covering February-April 2019) issued by ALJ Ryan Glaze on September 20, 2019, again, finding that TTFT was medically reasonable and necessary for Ms. Pehoviack and a covered benefit.  The Secretary did not appeal Judge Glaze's decision and it has become final.

23.     Also, on September 20, 2019, ALJ Glaze issued a decision in ALJ Appeal No. 1-8651276602 (covering July-October 2018), again, finding that TTFT was medically reasonable and necessary for Ms. Pehoviack and a covered benefit.

24.     Through CMS, the Secretary appealed the decision in '602 (but not '128 issued the same day).  On February 18, 2020, the Medicare Appeals Council issued a decision reversing ALJ Glaze and finding that (contrary to all the prior decisions) TTFT is not a Medicare covered benefit because it is not "medically reasonable and necessary."

25.     Ms. Pehoviack timely filed this suit within 60 days.

26.     Accordingly, Ms. Pehoviack is entitled to judicial review.

## CAUSES OF ACTION

### Count I
### Violation of 42 U.S.C. § 405(g)
(Contrary to Law)

27.     Plaintiff hereby incorporates Paragraphs 1-26 as though set forth in full herein.

28.     Based on the foregoing, Plaintiff asks the Court to reverse the Secretary's Decision as contrary to law, as arbitrary and capricious, an abuse of discretion, and unsupported by the evidence, and issue an order finding that Plaintiff's claims are covered and direct the Secretary to make appropriate payment for the claims that are the subject of this case.

//

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

**COUNT II**
**Violation of 5 U.S.C. § 706(1)**
(Unlawfully Withheld or Unreasonably Delayed)

29.     Plaintiff hereby incorporates Paragraphs 1-28 as though set forth in full herein.

30.     Based on the foregoing, Plaintiff asks the Court to reverse the Secretary's Decision as unlawfully withheld or unreasonably delayed and unsupported by the evidence, and issue an order finding that Plaintiff's claims are covered and direct the Secretary to make appropriate payment for the claims that are the subject of this case.

**COUNT III**
**Violation of 5 U.S.C § 706(2)(A)**
(Arbitrary and Capricious, Abuse of Discretion, Not in Accordance with Law)

31.     Plaintiff hereby incorporates Paragraphs 1-30 as though set forth in full herein.

32.     Based on the foregoing, Plaintiff asks the Court to reverse the Secretary's Decision as arbitrary and capricious, an abuse of discretion, and otherwise not in accordance with the law, and issue an order finding that Plaintiff's claims are covered and direct the Secretary to make appropriate payment for the claims that are the subject of this case.

**COUNT IV**
**Violation of 5 U.S.C § 706(2)(C)**
(In Excess of Statutory Jurisdiction, Authority, or
Limitations or Short of Statutory Right)

33.     Plaintiff hereby incorporates Paragraphs 1-32 as though set forth in full herein.

34.     Based on the foregoing, Plaintiff asks the Court to reverse the Secretary's Decision as in excess of the Secretary's authority and limitations and short of Plaintiff's statutory rights and issue an order finding that Plaintiff's claims are covered and direct

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

COMPLAINT

the Secretary to make appropriate payment for the claims that are the subject of this case.

## COUNT V
### Violation of 5 U.S.C § 706(2)(D)
(Without Observance of Procedure Required by Law)

35.     Plaintiff hereby incorporates Paragraphs 1-34 as though set forth in full herein.

36.     Based on the foregoing, Plaintiff asks the Court to reverse the Secretary's Decision as done without observance of the procedure required by law and issue an order finding that Plaintiff's claims are covered and direct the Secretary to make appropriate payment for the claims that are the subject of this case.

## COUNT VI
### Violation of 5 U.S.C § 706(2)(E)
(Not Supported by Substantial Evidence)

37.     Plaintiff hereby incorporates Paragraphs 1-36 as though set forth in full herein.

38.     Based on the foregoing, Plaintiff asks the Court to reverse the Secretary's Decision as not supported by substantial evidence and issue an order finding that Plaintiff's claims are covered and direct the Secretary to make appropriate payment for the claims that are the subject of this case.

## VI.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff asks that this Court:

A.     Enter an order:

(1)     finding that the Secretary is collaterally estopped from relitigating whether TTFT treatment for Plaintiff is a covered benefit;

(2)     finding that, in light of the prior decisions granting coverage, the denials at issue in this case are arbitrary and capricious;

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

COMPLAINT

(3)     finding that TTFT is medically reasonable and necessary for the Plaintiff and a covered Medicare benefit;

(4)     directing the Secretary to cover the claims at issue in this case;

B.     Award attorneys' fees and costs to Plaintiff as permitted by law; and

C.     Provide such further and other relief as this Court deems appropriate.

Dated:  April 3, 2020                              Respectfully submitted,


REED SMITH LLP

_/s/ Farah Tabibkhoei_____
Farah Tabibkhoei

and

James C. Pistorino
PARRISH LAW OFFICES
224 Lexington Dr.
Menlo Park, CA 94025-2910
Telephone: (650) 400-0043


*Attorneys for Plaintiff Linda Pehoviack*

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

- 10 –
COMPLAINT